IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ROY RENFRO, JOHN THORNTON, JEFFREY TOTH, and PAUL CASTANEDA<br><br>                    Plaintiffs,<br>v.<br><br>SPARTAN COMPUTER SERVICES, INC.<br><br>    Serve: Ohn I. Steenhausen<br>              350 W. Phillips Rd.<br>              Greer, SC 29650<br><br>                    Defendant. | Case No.   07-2050 CM |

## COMPLAINT

Plaintiffs Roy Renfro, John Thornton, Jeffrey Toth, and Paul Castaneda, for their Complaint against Defendant Spartan Computer Services, Inc. ("Spartan") state as follows:

### NATURE OF CASE

1. This is an action seeking redress for unlawful retaliation under the Fair Labor Standards Act of 1938 ("FLSA").

2. Plaintiffs were employed by Spartan Computer Services, Inc. Plaintiffs worked out of their homes, responding to calls to repair or maintain point-of-sale systems, such as electronic cash registers, scanners, scales, and telephone equipment at the business locations of Spartan's clients.

3. On July 11, 2006, Mr. Renfro and other current or former Spartan employees filed a lawsuit against Spartan alleging that Spartan had failed to compensate them for overtime hours

they had worked. Each of the four plaintiffs in this action is also a plaintiff in the related action against Spartan regarding unpaid overtime allegations.

4. Spartan terminated Plaintiffs Roy Renfro, Jeffrey Toth, and Paul Castaneda after they became plaintiffs in the overtime lawsuit.

5. Spartan terminated Plaintiff John Thornton after he complained about not being paid overtime compensation for overtime hours he had worked.

6. In addition, Roy Renfro had filed a Worker's Compensation claim and had been received physicians' orders limiting his working hours and his daily mileage.

## PARTIES

7. Plaintiff Roy Renfro worked as a field technician for Spartan from his home in Wellington, Kansas. Mr. Renfro is a resident of Sumner County, Kansas.

8. Plaintiff John Thornton worked as a field technician for Spartan from his home in Laurel, Maryland. Mr. Thornton is a resident of Prince George's County, Maryland.

9. Plaintiff Jeff Toth worked a field technician for Spartan from his home in Waterloo, Illinois. Mr. Toth is a resident of Monroe County, Illinois.

10. Plaintiff Paul Castaneda worked as a field technician for Spartan from his home in Kansas City, Missouri. Mr. Castaneda is a resident of Jackson County, Missouri.

11. Defendant Spartan Computer Services is a privately held company incorporated in South Carolina with its principal place of business in Greer, South Carolina.

## JURISDICTION AND VENUE

12. The Fair Labor Standards Act of 1938, ("FLSA"), as amended, 29 U.S.C. § 201 *et. seq.*, in relevant part, authorizes court actions by private parties to recover damages for

violation of the FLSA's anti-retaliation provisions. Jurisdiction over Plaintiff's FLSA retaliation clam is based upon 29 U.S.C. §§ 215 (a)(3) and 216(b), and 28 U.S.C. §§ 1331 and 1337.

13. Venue in this district is proper pursuant to 28 U.S.C. § 1391(b) and (c), because Spartan does business in this district and because some of the events giving rise to Plaintiffs' claims occurred in this district.

## FACTS

### Roy Renfro

14. Roy Renfro became employed with Spartan on March 27, 2003, working as a field technician.

15. On July 11, 2006, Roy Renfro and other current or former Spartan employees filed a lawsuit styled *Renfro, et al. v. Spartan Computer Services, Inc.*, No. 06-2284-KHV, which is pending in this Court. The lawsuit alleged that the plaintiffs worked overtime hours and were eligible for overtime compensation, but did not receive overtime compensation. Renfro and the other plaintiffs sought compensation for overtime hours worked, including time spent on call.

16. In addition, in November 10, 2005, Roy Renfro had filed a Worker's Compensation claim arising from a back injury he received while working for Spartan. Mr. Renfro's Worker's Compensation physicians issued a series of orders in the months that followed restricting Mr. Renfro's work to eight hours per day and imposing daily restrictions on the number of miles Mr. Renfro could drive in a single day.

17. For example, on April 18, 2006, Mr. Renfro was restricted to eight hours and 400 miles per day. On June 21, 2006, Mr. Renfro was restricted to eight hours and 200 miles per day. On July 20, 2006, Mr. Renfro was restricted to eight hours and 300 miles per day.

18. In late July or early August 2006, Curt Carwile, Mr. Renfro's supervisor, requested that one of Spartan's restaurant clients, Braum's, write a letter of complaint about Mr. Renfro.

19. Mr. Carwile informed Mr. Renfro that he had been instructed by Terry Connorton, Spartan's Vice President of Field Services, to request the letter of complaint about Mr. Renfro.

20. In response to Mr. Carwile's request, Braum's personnel wrote the letter to Spartan stating that a Braum's employee had called Mr. Renfro instead of calling Spartan directly, and that, although another Spartan employee had gone to the store after Braum's called Spartan directly, "Roy never made it on site to the store."

21. Braum's later indicated that they were please with Mr. Renfro's work.

22. On October 6, 2006, Mr. Carwile stated to Mr. Renfro that he was a candidate for termination. While Mr. Carwile offered as one reason Spartan's loss of a contract with CKE, which operates Hardees restaurants, he also stated that Mr. Renfro's participation in the overtime lawsuit and his mileage restrictions made him an attractive candidate for termination.

23. On October 17, 2006, Spartan terminated Mr. Renfro, offering the loss of the CKE/ Hardees contract as the reason.

24. Mr. Renfro serviced Spartan clients in and within driving distance of Wichita, Kansas. He did not service any Hardees restaurants.

25. Spartan retained an employee in the same region who had only approximately 90 days of service with the company.

26. On information and belief, Spartan's management circulated an email to employees stating that Roy Renfro had been terminated. It was not Spartan's usual practice to circulate emails with respect to terminated employees.

### John Thornton

1. John Thornton became employed at Spartan in June 2006 as a field technician.

2. When Mr. Thornton was hired, he was told he would be eligible for overtime pay at a rate of 1.5 times his usual rate of pay.

3. Mr. Thornton worked overtime hours during each of his first two weeks of employment, but did not receive overtime pay for the overtime hours worked.

4. When Mr. Thornton did not receive overtime pay for his first two weeks of employment, he complained to his supervisor, David Burdette. On July 14, 2006, Mr. Burdette told Mr. Thornton that his overtime pay would appear in his next paycheck.

5. On July 24, 2006, Mr. Thornton again complained to Mr. Burdette. Mr. Burdette then informed Mr. Thornton that Mr. Thornton would be required to fill out the proper forms and obtain the proper approvals to receive overtime pay. Mr. Thornton filled out the paperwork, as requested by Mr. Burdette.

6. On August 29, 2006 and August 30, 2006, Mr. Thornton sent emails to Spartan's Human Resources Department and to Jack Steenhausen, Spartan's President, inquiring about the status of his overtime pay.

7. On September 14, 2006, Spartan terminated Mr. Thornton.

### Jeffrey Toth

8. Jeffrey Toth became employed at Spartan in August 2004 as a field technician.

9. While Mr. Toth was employed at Spartan, his performance was exemplary. Mr. Toth's Regional Manager, Don Fullman, would often contact Mr. Toth, as opposed to other available technicians, to solve problems.

10. Mr. Toth filed a consent-to-join form and became a plaintiff in the unpaid overtime lawsuit against Spartan on September 18, 2006.

11. Spartan terminated Mr. Toth in October 2006, offering as a reason the loss of a contract with CKE, which operates Hardees restaurants.

12. When Spartan terminated Mr. Toth, it also terminated another field technician in Mr. Toth's region. Spartan retained, however, two probationary employees to perform the duties of Mr. Toth and the other terminated technician. Neither of the employees retained had joined the overtime lawsuit.

**Paul Castaneda**

27. Paul Castaneda became employed at Spartan in September 2002 as a field technician.

28. Paul Castaneda filed a consent-to-join form and became a plaintiff in the unpaid overtime lawsuit against Spartan on August 7, 2006.

29. On August 29, 2006, Mr. Castaneda gave notice to his Regional Manager, Curt Carwile, that he intended to resign his position in two weeks.

30. Spartan requested that Mr. Castaneda remain an additional week to train a new technician. Mr. Castaneda agreed. As a result, Mr. Castaneda's last work day was scheduled for September 22, 2006.

31. On September 21, 2006, Mr. Carwile telephoned Mr. Castaneda, stated that Mr. Castaneda was an important asset to the company, and requested that Mr. Castaneda reconsider his decision to leave.

32. Mr. Castaneda responded to Mr. Carwile that he wished to remain at the company.

33. The next morning, September 22, 2006, Mr. Carwile telephoned Mr. Castaneda and informed him that Spartan would not in fact permit Mr. Castaneda to remain at the company and that September 22 would be his last day.

34. Contrary to Mr. Castaneda's wishes, Spartan terminated Mr. Castaneda on September 22, 2006.

35. Approximately one to two weeks after Mr. Castaneda's termination, Mr. Carwile again telephoned Mr. Castaneda to discuss the possibility of Mr. Castaneda's returning to the company.

36. In a subsequent telephone call with Mr. Castaneda, Mr. Carwile stated that was unable to offer Mr. Castaneda a position, because, despite Mr. Castaneda's experience and his value to the company, Spartan's upper management would not permit Mr. Castaneda to be rehired.

## COUNT I

### Violation of the Fair Labor Standards Act of 1938 -Retaliation Claim
### (All Plaintiffs)

37. Plaintiff realleges and incorporates herein every paragraph set forth above as if fully set forth herein.

38. The Fair Labor Standards Act prohibits retaliation against employees for asserting rights under the Act. 29 U.S.C. § 215.

39. Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* by intentionally retaliating against Plaintiffs Renfro, Thornton, and Toth by terminating their employment because they joined the lawsuit *Renfro v. Spartan Computer Services, Inc.*, Case No. 06-2284-KHV, in the United States District Court for the District of Kansas.

40. Defendant violated the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* by intentionally retaliating against Plaintiff Thornton by terminating his employment because he repeatedly requested that he be paid overtime compensation for his overtime hours.

41. Mr. Thornton's assertion of his right to be compensated for his overtime hours is a protected activity under the Act.

42. A causal connection existed between Plaintiffs' assertion of their rights under the Act and Spartan's decision to terminate each Plaintiff.

43. Defendant intentionally and willfully discriminated and retaliated against Plaintiffs Renfro, Thornton, Toth, and Castaneda with malice and with reckless indifference to Mr. Renfro's federally protected rights under the FLSA, 29 U.S.C. § 201 *et seq.*

WHEREFORE, Plaintiffs demand judgment against Defendant and prays for an award of damages permitted by the FLSA, in excess of $75,000, and reasonable attorneys' fees, and costs incurred in the prosecution of this action, pre and post-judgment interest, punitive damages, and for such other and further relief as the Court may deem just and proper under the circumstances.

## COUNT II

### Wrongful Termination
### (Roy Renfro)

44. Plaintiff realleges and incorporates herein every paragraph set forth above as if fully set forth herein.

45. Plaintiff Roy Renfro was a Spartan employee from March 27, 2003 to October 17, 2006.

46.     Mr. Renfro sustained an on-the-job injury to his back in approximately October 2005. On November 10, 2005, Mr. Renfro filed a Worker's Compensation claim related to that injury.

47.     As a result of Mr. Renfro's injury and his Worker's Compensation claim, he was issued orders from physicians limiting his working hours and the number of miles he could drive in a single day. The restrictions continued at least until July 2006.

48.     Spartan was aware of Mr. Renfro's injury, his Worker's Compensation claim, and the resulting restrictions on his working conditions.

49.     Defendant terminated Mr. Renfro in part because of his injury, his Worker's Compensation claim, and the resulting restrictions on his working conditions.

WHEREFORE, Plaintiff Roy Renfro demands judgment against Defendant and prays for an award of damages in excess of $75,000, and reasonable attorneys' fees, and costs incurred in the prosecution of this action, pre and post-judgment interest, punitive damages, and for such other and further relief as the Court may deem just and proper under the circumstances.

## DESIGNATION OF PLACE OF TRIAL

50.     Plaintiff designates Kansas City, Kansas as the place of trial.

## DEMAND FOR JURY TRIAL

51.     Plaintiff requests a jury trial for all issues so triable.

Dated:  January 29, 2007

Respectfully submitted,

**STUEVE SIEGEL HANSON WOODY LLP**

/s/ Mark V. Dugan
George A. Hanson          KS Bar #16805
hanson@sshwlaw.com

Mark V. Dugan                KS Bar # 70685
dugan@sshwlaw.com
330 West 47th Street, Suite 250
Kansas City, Missouri 64112
Telephone: (816) 714-7100
Facsimile:   (816) 714-7101

**ATTORNEYS FOR PLAINTIFFS**